## A97A0555. HAMMOCK et al. v. BANK SOUTH.
### (483 SE2d 668)

ELDRIDGE, Judge.

The State Court of Cobb County granted a motion for summary judgment in favor of appellee Bank South. Appellants appeal.

From the record before us, it appears that in 1988, appellants obtained an original $25,000 loan, followed by a $725,000 construction loan, from Chattahoochee Bank (hereinafter "Bank South")[1] in order to build a retail shopping center in Marietta, Cobb County. Later that year, appellants attempted to have the construction loan converted into a 30-year mortgage loan; Bank South refused to provide such financing, and appellants began searching for an institution to provide permanent mortgage financing.

Appellants contacted Decatur Federal Savings & Loan (hereinafter "Decatur Federal") and on December 9, 1988, Decatur Federal agreed to give appellants a 30-year mortgage loan of up to $810,000. As a condition precedent to said loan, Decatur Federal required appellants to obtain additional collateral for the loan; appellants were to "provide lender with an irrevocable Letter of Credit drawn on a bank acceptable to lender in the amount of $125,000."

Appellee Bank South was informed of Decatur Federal's terms, and with the understanding that Bank South's $725,000 construction loan to appellants would be paid off with the proceeds from the Decatur Federal mortgage loan, Bank South agreed to issue on appellants' behalf an unsecured $125,000 irrevocable Letter of Credit which would be payable upon demand should appellants default on the Decatur Federal loan. On January 31, 1989, the Letter of Credit on behalf of the customer, appellants, was issued by the issuer bank, Bank South, to the beneficiary, Decatur Federal. Also on January 31, 1989, a Deed to Secure Debt was signed by appellants giving Decatur Federal security interest in the shopping center in exchange for a mortgage loan of $750,000. Bank South's $725,000 construction loan was paid off.

Appellants defaulted on the Decatur Federal loan. Decatur Fed-

---

[1] Chattahoochee Bank is a wholly owned subsidiary of Bank South.

eral made demand on the Letter of Credit and received $125,000 from Bank South. On September 1, 1992, Decatur Federal foreclosed on the shopping center pursuant to the Deed to Secure Debt; Decatur Federal purchased the property at public auction for $400,000. Within 30 days, Decatur Federal sought to confirm the foreclosure sale in Cobb Superior Court pursuant to OCGA § 44-14-161. During the pendency of these proceedings, Decatur Federal sold the property for $300,000. Thereafter on February 16, 1993, the trial court denied the confirmation, finding that the fair market value of the property was at least $575,000. Decatur Federal, thus, did not pursue a deficiency judgment against appellants for the approximately $225,000 outstanding balance remaining on appellants' debt to them.

Eleven months later, on December 27, 1993, appellants signed a promissory note renewing their obligation to Bank South for the original $25,000 loan for "working capital," which note was in the amount of $24,705.22. An additional six months later, on July 1, 1994, appellants signed a promissory note renewing their obligation to Bank South for the amount paid on their behalf under the Letter of Credit, which note was in the amount of $122,542.51.

Appellants defaulted on both promissory notes. Bank South brought suit. Pursuant to motion, the trial court granted summary judgment to the bank, finding that there were no genuine issues of material fact to be tried. *Held*:

In their sole enumeration of error, appellants contend that the trial court erred in granting summary judgment. Appellants contend that Bank South is actually suing for recovery on the $125,000 Letter of Credit, the proceeds of which went to Decatur Federal upon appellants' default on the Decatur Federal mortgage loan and were used to reduce the appellants' $750,000 indebtedness to Decatur Federal on the mortgage loan, a debt which was further reduced by Decatur Federal's subsequent foreclosure sale on appellants' property. Appellants argue that further reduction in the Decatur Federal debt by way of suit against them was barred by the February 16, 1993 court order denying the confirmation of the foreclosure sale. Thus, appellants argue that by attempting to recover under the Letter of Credit the $125,000 which was used to reduce their $750,000 secured mortgage loan debt to Decatur Federal, Bank South is, in fact, attempting to recover the equivalent of a deficiency judgment, which action is precluded by the denial of confirmation of the foreclosure sale pursuant to OCGA § 44-14-161. In support of this argument, appellants cite *Redman Indus. v. Tower Properties*, 517 FSupp. 144 (N.D. Ga. 1981).

*Redman Indus.*, a federal district court case: (1) has absolutely no binding precedential value; (2) involved an indemnification agreement for an unspecified amount with regard to "any loss" suffered, as opposed to a specific, contractual obligation under a Letter of Credit

as in this case; (3) involved an agreement to indemnify another against a loss in an amount to be determined by the actions (or lack thereof) of parties other than the indemnifier, as opposed to a mutuality of performance and specific obligation arising from a contractual agreement between the two parties involved, as in the instant case; and (4) concerned multiple, overlapping indemnification promises made by individual real estate developers with interests in the same property, as opposed to the involvement of two separate banking entities acting at arm's length in separate transactions involving the appellants, such as in the case sub judice. Thus, *Redman Indus.*, supra, is distinguishable on both the law and the facts from the instant case.[2]

However, more importantly, appellants' arguments are totally without merit as the instant case does not involve the Letter of Credit. The contractual obligations upon which this suit is grounded arose under the two promissory notes signed by appellants. Defects, if any, in appellants' prior contractual obligations to Bank South were cured when appellants voluntarily reassumed their debt and renewed their obligations by signing the promissory notes. *First State Bank &c. Co. v. Young*, 202 Ga. App. 566, 567 (415 SE2d 18) (1992); *Coast Scopitone, Inc. v. Self*, 127 Ga. App. 124, 127 (192 SE2d 513) (1972). Accordingly, appellants' arguments present no material issue of fact to be tried in this action, and there was no error in granting appellee's motion for summary judgment. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

---

[2] Unlike the scenario in *Redman Indus.*, supra, wherein the plaintiff's refusal to take advantage of its ability to reduce its indebtedness to a third party precluded its recovery for the amount of the debt from the guarantor defendant, appellants in the instant case owed Bank South the unsecured amount of $125,000 as soon as the appellants defaulted and the bank paid said amount to Decatur Federal on appellant's behalf under the Letter of Credit. Thus, regardless of the subsequent success or failure of the Decatur Federal foreclosure sale, the $125,000 was owed to Bank South by the appellants. Further, in order to fall more squarely within the ambit of *Redman Indus.*, supra, appellants attempt to distance themselves from their obligation to Bank South under the Letter of Credit by repeatedly asserting that said Letter was "negotiated between Bank South and Decatur Federal," and that the Letter of Credit was "issued directly to Decatur Federal." However, such assertions fail in their obvious purpose. Clearly, the Letter of Credit was issued on appellants' behalf. See OCGA § 11-5-103 (1) (g). Simply because the institutions involved negotiated the letter for the appellants does not disassociate appellants from their contractual obligation thereunder. No one forced the loan, or the requisite conditions precedent to receiving the loan, upon appellants, and we have difficulty believing, as appellants' arguments suggest, that the specific and identified price of doing business was not, at the time, knowingly and willingly entered into as evidenced by appellants' signatures on all relevant documents.

 

DECIDED MARCH 5, 1997.

*Talley & Darden, David P. Darden*, for appellants.
*King & Carragher, Joseph R. Carragher*, for appellee.